# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALPHONSO COLLINS, | ) 1:11-cv-00955 LJO GSA |
| Plaintiff, | ) **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Alphonso Collins ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff applied for supplemental security income benefits in June of 2007. *See* AR 144-150. The application was denied initially and on reconsideration. AR 108-112, 115-119. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ James P. Berry. AR 122-125, 126-139. ALJ Berry issued a decision denying benefits on November 21, 2009. AR 36-43. On July 7, 2011, the Appeals Council denied review. AR 1-2.

**Hearing Testimony**

ALJ Berry held a hearing on August 5, 2009, in Fresno, California. Plaintiff was present and testified; he was represented by attorney Jeffrey Milam. Vocational Expert ("VE") Thomas Dachelet also testified. AR 48-86.

On the date of the hearing, Plaintiff was thirty-six years old. He is married with two children, ages twelve and fifteen. AR 52-54. He does not have a driver's license and depends on his mother, brother, or public transportation to get around. AR 53. Plaintiff completed the twelfth grade and some college, earning a vocational certificate for medical assisting that he has never used professionally. AR 54. He is right-handed, six feet two inches tall, and weighed 350 pounds at the time he testified, having gained fifty pounds within the year proceeding the hearing. AR 54.

Plaintiff suffers from diabetes, which causes him to experience numbness in his hands, feet, and legs. AR 57. It also causes profuse sweating, frequent urination, decrease in visual ability, fatigue, and "the shakes." AR 57. He experiences numbness in his feet and legs all day long if he does not move. AR 57. His hands are numb if he does not constantly move or rub them. AR 57-58. He indicated he feels a "hot chill" and sweats fifty percent of the day. AR 58-59. Plaintiff testified he uses the restroom up to ten times an hour, but also indicated it has been up to fifteen times in one hour, or "every ten minutes." AR 59-60. Plaintiff's attorney clarified, and Plaintiff agreed, that on bad days, he's "in and out [of the bathroom] every two or three

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

minutes." AR 60. He was prescribed Lasix to help eliminate water retention associated with diabetes. AR 59. He feels the urgency even if the urine volume was low, and can "hold it" for a while, but risked an accident. AR 60-61. Plaintiff also suffers from blurred vision once a month as a side effect of his diabetes. AR 62. Additionally, he has a GI problem due to his diabetes and experiences nausea, fatigue, reflux, and pain in his chest. AR 73-74. He takes medication and had his gall bladder removed. AR 73.

Plaintiff tests his blood sugar four times a day, and has a functional range from 220 to 385. AR 62-63. His sugar level has dropped down to 80 on several occasions, and he is rushed to a hospital when this occurs. AR 63-64. Plaintiff's sugar level went above 385 in the week before his testimony, and he was hospitalized for three days. AR 64. He has trouble keeping his diabetes regulated, but takes his medications as a doctor prescribes them. AR 79. In regards to his diet, Plaintiff does not eat fried foods and watches his carbohydrate intake, but does not have a calorie ceiling. AR 79.

Plaintiff also suffers from heart problems. AR 65. His symptoms include pressure on his chest, shortness of breath, shooting pain, and fatigue. AR 66. He lies down for four and a half hours in an eight-hour day and feels that he could be on his feet for an hour, but would need to sit down several times. AR 66. Plaintiff can sit about thirty minutes at a time. AR 67. He can lift around twenty pounds. AR 67-68. He can use his hands for writing for about ten minutes but needs to rest them for at least half an hour. AR 74-75.

On a typical day, Plaintiff wakes up, showers, checks his blood sugar, eats, takes his medication, lies down, then checks his blood sugar again. AR 68-69. He watches television for about four hours a day and reads his bible. AR 69.

His wife and children help him wash his feet and put on shoes and check on him to make sure he hasn't fallen. AR 71-72. Plaintiff has fallen a few times, and once received stitches for his injuries. AR 72. However, though he sometimes feels "woozy," he does not use a cane to help him walk. AR 72. Plaintiff attends church services for about an hour and a half, one day a week. AR 69. He believes his medications are helpful, but their side effects leave him feeling drowsy all day and unable to function. AR 80.

Plaintiff's past work experience includes being a fast food cashier, telemarketer, farm equipment operator, and assistant manager at Wal-Mart. In April of 2007, he worked at Wendy's fast food restaurant as a cashier. AR 56, 75. He worked there approximately one month before he was discharged by his employer. AR 56. In that position, Plaintiff lifted dishes, pots, and pans weighing less than twenty pounds. AR 75-76. He next worked as a telemarketer for about one month. AR 56. This was a "sit-down job." AR 76. While working as a telemarketer, he was taken by ambulance to the hospital due to his diabetes. AR 56. Again, Plaintiff was discharged by his employer. AR 56.

In either 2003 or 2004, Plaintiff worked as a farm equipment operator, where he drove a tractor and hauled dirt to build dairies. AR 77-78. He held this job for five months or more as a full-time employee. AR 78. In performing his job duties, Plaintiff lifted a shovel daily. AR 78.

From 1994 to around 2000, Plaintiff was an assistant manager at Wal-Mart. AR 76-77. During his employment at Wal-Mart, he ordered merchandise, "walked the store," handled customer services duties, and interacted with employees. AR 76. About twice a week he stocked shelves and created store displays. AR 77. Plaintiff lifted 100 pounds during the course of his work. AR 77.

The VE identified plaintiff's past work as an assistant manager, a cashier at a fast food restaurant, a telemarketer, and a farm equipment operator. AR 83. VE Dachelet indicated the assistant manager position is consistent with the Dictionary of Occupational Titles ("DOT"), medium, with an SVP[2] of 7, skilled. AR 83. With regard to Plaintiff's prior work as a fast food cashier, it is classified as light and unskilled. AR 83. Plaintiff's prior work as a telemarketer is classified as sedentary, with an SVP of 3, semi-skilled. AR 83. When asked to describe Plaintiff's prior work as a farm equipment operator, the VE noted that the work was performed at the light level but is typically classified as heavy, semi-skilled work with an SVP of 3. AR 83.

VE Dachelet was asked to consider a hypothetical individual of Plaintiff's age, education, and experience. Additionally, the VE was asked to assume the hypothetical worker had a

---

[2] "SVP" refers to specific vocational preparation.

4

combination of severe impairments and the residual functional capacity ("RFC") to lift and carry fifteen pounds occasionally and five pounds frequently, who can stand, walk and sit for six hours each, in an eight-hour day. AR 83-84. VE Dachelet indicated that such a worker could perform Plaintiff's past work as an assistant manager, cashier, and telemarketer. However, the VE stated that the worker would not be able to perform Plaintiff's past relevant work as a farm equipment operator. AR 84.

Next, VE Dachelet was asked to assume a similar hypothetical worker with the ability to lift and carry fifteen to twenty pounds maximum, and who could stand and walk for one hour maximum, use his hands ten minutes at a time, and who must elevate the feet during the day and be permitted rest breaks totaling four and a half hours. In addition, the worker would need frequent bathroom breaks, averaging eight per hour. In light of those limitations, VE Dachelet indicated the hypothetical worker would be unable to perform any of Plaintiff's past relevant work and the world of work would be closed. AR 84.

**Medical Record**

The entire medical record was reviewed by the Court: AR 224-779. A summary of the relevant medical records is provided below.

**Kaweah Delta Health Care District**

Plaintiff visited the emergency room complaining of chest pain on September 30, 2005. AR 246. A physical examination and a chest x-ray showed that there was normal cardiac function; there was no acute cardiac disease. AR 254, 260, 262. He again visited the emergency room for chest pain on December 25, 2005, but his cardiovascular physical exam was normal. AR 225, 231.

**Tulare District Hospital**

Plaintiff arrived at the emergency room complaining of chest pain on October 31, 2004, and was admitted for six days. AR 383-390. An x-ray was performed that showed borderline cardiomegaly and a physical exam revealed regular heart sounds. AR 383. Plaintiff was found to be tachycardic on November 1, 2004, but an echocardiogram was normal. AR 383, 385. His

mitral valve was normal with no regurgitation or stenosis, and coronary angiography was recommended to rule out coronary artery disease. AR 389-390.

Plaintiff was hospitalized from February 4, 2005 to February 11, 2005. AR 370. He arrived complaining of chest pain but he was negative for congestive heart failure. AR 370. Plaintiff underwent a cholecystectomy and doctors noted that he was obese. AR 370, 372. On February 8, 2005, a left heart catheterization was performed and it was noted that there was normal cardiac anatomy. AR 504.

A sleep test was performed on April 12, 2005, wherein echocardiogram results were normal. AR 363-364. Plaintiff was found to suffer from severe obstructive sleep apnea and obesity. AR 363-364.

Plaintiff again visited the emergency room for chest pain on October 9, 2005, but test results were normal. AR 359. On December 10, 2005, he complained of chest pain, yet no abnormal heart sounds were obtained. AR 351. It was documented that Plaintiff was obese and had persistent cardiomegaly. AR 351, 354. A hospital visit on May 4, 2006, produced a chest x-ray negative for heart disease. AR 328. A Cardiac Echo Doppler study performed on June 14, 2006, revealed there was no congestive heart failure and there was trace mitral regurgitation without systolic mitral valve prolapse present. AR 320.

On December 14, 2006, Plaintiff again complained of chest pain, but a physical exam revealed normal heart function and further tests were negative for heart disease. AR 303, 307. A computed tomography scan of the chest was performed on December 18, 2006, which showed the heart appeared normal and there was no cardiopulmonary abnormality. AR 300.  A chest x-ray performed on May 30, 2007, did not reveal heart disease. AR 296.

 Plaintiff was seen in the emergency room twice in March of 2008 for chest pain; chest x-rays were normal on both occasions. AR 653, 681, 692.

On June 17, 2008, a Doppler Study was performed, which was limited due to Plaintiff's size. AR 598. The results showed an ejection fraction of thirty-five percent, but the left ventricle chamber size could not be measured. AR 598. The reduced ejection fraction was compatible with congestive heart failure. AR 598. However, another Doppler examination was performed three

months later on September 23, 2008, which revealed a normal ejection fraction of sixty-one percent. AR 605. Again it was noted that the test was limited due to Plaintiff's size and that his organs were not well visualized. AR 605.

In March and April of 2009, normal chest x-rays were obtained. AR 579, 595.

### Tulare Community Health Clinic

Plaintiff was examined by Dr. Mohammed Ali, M.D., nine times between February 8, 2006 and June 25, 2007. AR 394-420. Each time his heart was found to be normal. Dr. Ali's assessments included diabetes, hypertension, morbid obesity, cardiomyopathy, and congestive heart failure. AR 396, 400, 402, 404, 408, 411, 414, 418, 420.

On May 3, 2006, Plaintiff complained of frequent urination, ongoing for a few weeks. AR 416. On May 29, 2007, he visited the clinic to request pain medication for a broken foot. AR 398. On June 25, 2007, Plaintiff sought pain medication for pain in his legs. AR 394. He was given a prescription for fifteen Vicodin tablets, but he altered the prescription to add one refill. AR 394. The pharmacy detected the alteration. AR 394.

### Hillman Health Clinic

On January 24, 2008, Plaintiff was seen for heart problems and was diagnosed with sinus tachycardia, congestive heart failure out of control, diabetes, and morbid obesity. AR 539. He was advised to return a week later, which he did, and it was found that he no longer had congestive heart failure. AR 538.

### Truc Nguyen, M.D.

Plaintiff was seen by Dr. Nguyen from July of 2008 to July of 2009. On July 20, 2008, Plaintiff was admitted to the emergency room for chest pain but a chest x-ray and physical exam showed regular heart function. AR 633-634. Dr. Nguyen noted that coronary artery disease had been ruled out by an angiogram performed two years prior. AR 634. On August 22, 2008, Dr. Nguyen examined Plaintiff; echocardiogram and cardiomyopathy results were normal. AR 534. Dr. Nguyen also assessed that Plaintiff did not have coronary artery disease three years ago. AR 534. On September 9, 2009, Dr. Nguyen examined Plaintiff and assessed that he was not now in congestive heart failure, but that he had obesity, diabetes, and arthritis, though no specific

affected body parts were stated. AR 532.  Plaintiff was also told to adhere to an 1800 calorie diet. AR 532. On September 20, 2008, an echocardiogram was performed that showed normal sinus rhythm. AR 602. Plaintiff was again seen by Dr. Nguyen on September 25, 2008, where he had regular cardiac function, but it was determined that he could have significant coronary artery disease. AR 531. He was seen by Dr. Nguyen again on October 28, 2008, where he was assessed as having extreme obesity, diabetes, and myalgia, but nothing else. AR 530.

Tests from January, July, and October of 2008 showed that Plaintiff's diabetes was poorly controlled. AR 550, 555, 556.

On July 3, 2009, Dr. Nguyen completed a Residual Functional Capacity Questionnaire where he concluded Plaintiff had severe diabetic neuropathy and cardiomyopathy AR 752-753. He indicated that Plaintiff could sit for three hours, stand/walk for one hour, must lie down or elevate his legs for four hours a day, could frequently lift less than five pounds, and could occasionally lift five pounds. AR 752-753. Dr. Nguyen indicated that Plaintiff does not have a hand impairment, but is limited in reaching, handling and grasping for 4 hours and pushing/pulling for less than 1 hour. AR 752-753.

Plaintiff was admitted to Tulare Regional Medical Center on July 26, 2009. AR 762. He denied having a history of frequent urination. AR 763. An echocardiogram showed normal sinus rhythm and a chest X-Ray was negative for heart disease. AR 766, 779. On July 27, 2009, Plaintiff underwent a left heart catheterization and coronary angiogram. AR 760. The procedure showed that the overall left ventricular systolic function appeared normal and the ejection fraction was about 60 percent. AR 760. The heart appeared normal and negative for congestive heart failure. AR 760.

**Physical RFC Assessment**

A Physical Residual Functional Capacity Assessment was completed by a state agency medical consultant on August 16, 2007. AR 423-428. It was  concluded that Plaintiff was able to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, sit, stand and/or walk for six hours in eight hour workday, and there were no other limitations. AR 423-427.

**ALJ Berry's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 36-43. More particularly, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since June 21, 2007, the alleged onset date, and that he had the severe impairments of diabetes mellitus type 2, obstructive sleep apnea, hypertension, and obesity. AR 38. Nonetheless, the ALJ determined that, from the alleged onset date, Plaintiff did not have an impairment or combination of impairments that met or exceeded one of the listing impairments. AR 38.

Based on his review of the medical evidence, the ALJ determined that Plaintiff has the RFC to lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, and to sit, stand and/or walk for about six hours in an eight-hour work day. AR 38. The ALJ determined that Plaintiff is able to perform the full range of medium work. AR 42. Therefore, the ALJ determined Plaintiff could perform his past relevant work as a cashier, a telemarketer, and as a retail assistant manager. AR 42. Thus, the ALJ found that Plaintiff was not disabled. AR 42.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n.10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## DISCUSSION

Plaintiff claims that the ALJ did not give sufficient reasons to reject his claims of fatigue and a need for bathroom breaks due to urinary frequency associated with diabetes, and that insufficient reasons were given for rejecting the treating physician's opinion. (*See* Doc. 16 at 3, 5.) The Commissioner asserts that the ALJ properly considered the treating physician's opinion and properly found Plaintiff was not entirely credible. (Doc. 17 at 5, 9.)

### *The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ erroneously rejected the opinion of treating physician Dr. Nguyen, of the Tulare Regional Medical Center. (Doc. 16 at 5.)

**Applicable Legal Standards**

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without

providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue,* 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not given controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of

11

the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

### ALJ Berry's Relevant Findings

ALJ Berry found as follows with regard to the opinion of Dr. Nguyen:

> Medical records disclose that the claimant was treated and evaluated at multiple health care facilities, including Kaweah Delta Health Care District, Tulare District Hospital and Tulare Community Health Clinic, primarily for the impairments listed above, as well as complaints of chest pain. The claimant's primary care doctor was Mohammed Ali, M.D. at Tulare Community Health Clinic until sometime around January 2008. After that time, a number of physicians treated the claimant, including Truc Nguyen, M.D. At these multiple visits such as at Tulare Hospital, the claimant almost always complained of chest pains. He also gave a medical history of congestive heart failure (CHF). A number of cardiac workups were performed in the record that resulted in negative results for congestive heart failure and/or coronary artery disease. A number of chest x-rays were taken from 2005 through 2009. All were negative for heart disease. In June 2006, an echocardiogram was normal with a left ventricle ejection fraction of 72 percent. Dr. Mohammed indicated that the claimant was tested for CHF, and there was none.
>
> In contrast, on January 24, 2008, Truc Nguyen, M.D., gave a diagnostic impression of congestive heart failure out of control. On June 29, 2008, Truc Nguyen, M.D., after reviewing a February 2005 angiogram, indicated that claimant did not have coronary artery disease three years ago. However, he referred to an echocardiogram that was done in July 2008 that showed an ejection fraction of 35 percent and opined that this was compatible with cardiomyopathy. Dr. Nguyen admitted in his September 9, 2008 notes that the claimant was now not in congestive heart failure. Dr. Nguyen also gave an assessment of peripheral neuropathy and arthritis. It is noted that none of the treating notes, including Dr. Nguyen's, provide any objective medical evidence of peripheral neuropathy and arthritis. With respect to peripheral neuropathy, Dr. Nguyen did not state which specific body part(s) involved neuropathy.
>
> The left ventricle ejection fraction of 35 percent of which Dr. Nguyen relied on in rendering his opinion of cardiomyopathy was performed on June 17, 2008. This is inconsistent with all other echocardiograms, Doppler studies of record, and Dr. Nguyen is the only doctor of record who diagnosed cardiomyopathy. It is noted that the Doppler Study indicates that the study was technically limited and difficult due to the claimant's large size, over 330 pounds. The left ventricular chamber size could not be measured. It is noted that the Doppler study otherwise revealed a normal study. The only evidence of congestive heart failure was the ejection fraction.

> If in fact the claimant had an ejection fraction of 35 percent on June 17, 2008, another echocardiogram, Doppler study was performed three months later on September 23, 2008, whcih showed a normal ejection fraction of 61 percent. Even if this improvement was medically conceivable, it shows that the claimant did not have congestive heart failure or cardiomyopathy impairment as defined in the regulations. A July 28, 2009 left heart catheterization and coronary angiogram confirmed the absence of any heart disease. The results of the procedure were normal with no significant coronary lesion. This is consistent with the previous cardiac workup studies of record.
> Nevertheless, on a Residual Functional Capacity Questionnaire dated July 30, 2009, Truc Nguyen, M.D., concluded that the claimant had severe diabetic neuropathy and a primary impairment of cardiomyopathy. He concluded that the claimant must lie down or elevate his legs for four hours on average during an eight hour workday. He could lift less than five pounds frequently and could lift five pounds occasionally. Dr. Nguyen admitted that the claimant had no hand impairment, but due to obesity and a heart and lung condition, and complications of diabetes, the claimant was limited in reaching, handling and grasping for four hours and pushing and/or pulling for less than one hour.
> On a Physical Residual Functional Capacity Assessment form dated August 16, 2007, a State agency medical consultant concluded that the claimant was able to lift and/or carry 50 pounds occasionally and 25 pounds frequently, sit, stand and/or walk for about six hours in an eight-hour workday, with no other limitations.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> As for opinion evidence, I give little weight to the opinion of Dr. Nguyen. His diagnosis of neuropathy is not supported by objective medical evidence, and the cardiomyopathy diagnosis is not a significant factor since the claimant's cardiac catheters have shown normal left ventricle functioning throughout the record and as recently as July 26, 2009. The functional limitations are too restrictive, even based on the diagnoses given. Dr. Nguyen gave hand limitations even though he admitted that the claimant has no hand impairment. Dr. Nguyen's opinion of the claimant's residual factional capacity is not supported by his treatment notes. I do not accept the opinion of Dr. Nguyen. The opinion of the State agency medical consultant is given substantial weight. It is consistent with, and supported by, the medical evidence as a whole.

AR 39-42, internal citations omitted.

Because Dr. Nguyen's treating opinion was contradictory with the medical record as a whole, the ALJ was required to provide specific and legitimate reasons to reject the opinion. *Murray v. Heckler*, 722 F.2d at 582.

Here, ALJ Berry pointed out many inconsistencies between the majority of the medical record and Dr. Nguyen's opinion. AR 39-41. The ALJ found a July 2009 heart catheterization and coronary angiogram confirmed the absence of heart disease, which is inconsistent with Dr. Nguyen's diagnosis of cardiomyopathy. AR 40. The left ventricle ejection fraction of thirty-five percent, which Dr. Nguyen relied on in diagnosing Plaintiff with cardiomyopathy, is inconsistent with other Doppler studies and echocardiograms performed on Plaintiff. AR 40.

With respect to the supportablility of the treating opinion, the ALJ found that in January of 2008, Dr. Nguyen gave a diagnosis of congestive heart failure out of control in Plaintiff, but six months later, in July of 2008, he determined that Plaintiff did not have coronary artery disease three years before, and that he currently had regular heart function. AR 39, 633-634.

Further, the ALJ pointed out that on a Residual Functional Capacity Questionnaire from July 2009, Dr. Nguyen diagnosed Plaintiff with severe diabetic neuropathy and arthritis, but none of the treating notes provide evidence of this. AR 40. It was also determined that despite Dr. Nguyen's diagnoses of cardiomyopathy and congestive heart failure, all chest x-rays were negative for heart disease. AR 39, 254, 260, 296, 328, 383, 579, 595, 653, 681, 692.

The ALJ need not believe everything a physician sets forth, and may accept all, some, or none of the physician's opinions. *Magallanes v. Bowen*, 881 F.2d 747, 753-754 (9th Cir. 1989). Here, the ALJ determined the entire medical record did not support the findings of Dr. Nguyen, and that the most recent cardiac test, a July 2009 heart catheterization and coronary angiogram, confirmed the absence of any heart disease. AR 40.

Rejecting an opinion that contains internal inconsistencies is a specific and legitimate reason to discount the opinion. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also Buckner-Larkin v. Astrue*, 2011 WL 4361652 (9th Cir. Sept. 20, 2011).

ALJ Berry provided specific and legitimate reasons to accord little weight to the opinion of Dr. Nguyen regarding Plaintiff's capabilities. Therefore, the ALJ's findings in this regard are supported by substantial evidence and are free from legal error.

*Consideration of Plaintiff's Credibility*

Plaintiff contends the ALJ erred by improperly rejecting his allegations of fatigue and the need for increased bathroom breaks. (Doc. 16 at 3.) The Commissioner asserts the ALJ followed the correct legal standards when evaluating Plaintiff's credibility. (Doc. 17 at 9-10.)

**Applicable Legal Standards**

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d at 1281. First, the claimant must produce objective

medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal.2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

### ALJ Berry's Relevant Findings

ALJ Berry found as follows with regard to Plaintiff's credibility and symptoms:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
> The claimant alleges that he is disabled due to high blood pressure, hypertension, congestive heart failure, muscular disease, constant pain in legs, and his medications make him real tired. However, the record does not substantiate that any of these impairments are disabling. As discussed at length above, the medical evidence as a whole does not support a diagnosis of congestive heart failure. All cardiac tests, except for one flawed echocardiogram in June 2008, indicate that the claimant's heart function is normal.
> There is no evidence that the claimant has any type of muscular disease. Treating notes from Tulare Community Health Clinic dated June 29, 2007 indicate that the claimant reported a history of muscle dystrophy. He also

>complained of back pain. The doctor suspected "foul play" in an attempt to get pain medication, Vicodin. On June 25, 2007, the claimant had arrived at the clinic complaining of pain in the legs and demanding pain medications. Dr. Kumar gave the claimant 15 tablets and referred him to his primary care physician. At the pharmacy, the claimant altered Dr. Kumar's prescription and added one refill of Vicodin. Dr. Kumar reported the claimant's violation of clinic rules and regulations and recommended that appropriate action be taken. The claimant's drug-seeking behavior reduces his credibility. As for the constant pain in his legs, the record does not contain any objective medical evidence of an impairment related to his complaint for a continuous period of 12 months.
>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>The claimant's credibility is reduced by the lack of objective medical evidence to substantiate disability. While the claimant has some limitations, the objective medical evidence substantiates he remains able to work.

AR 41-42, internal citations omitted.

### Analysis

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, ALJ Berry found that Plaintiff's severe impairments of diabetes mellitus type 2, obstructive sleep apnea, hypertension, and obesity could reasonably be expected to produce the alleged symptoms. AR 38, 41. This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d at 1281-1282.

With regard to the second step, ALJ Berry noted Plaintiff's drug seeking behavior, coupled with a lack of objective medical evidence. AR 41-42.

More specifically, ALJ Berry found Plaintiff's drug-seeking behavior reduced his credibility. AR 41. An ALJ can properly consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, or other testimony by the claimant that appears less than candid. *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638. More precisely, an ALJ may rely on instances of drug-seeking behavior when determining an individual's credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that evidence of drug-seeking behavior undermines a claimant's credibility); *Gray v. Comm'r of Soc. Sec.*, 365 Fed. Appx. 60, 63 (9th Cir. 2010) (evidence of drug-seeking behavior is a valid reason for finding a claimant not credible); *Lewis v. Astrue*, 238 Fed. Appx. 300, 302 (9th Cir.

2007) (inconsistency with the medical evidence and drug-seeking behavior sufficient to discount credibility); *Morton v. Astrue,* 232 Fed. Appx. 718, 719 (9th Cir. 2007) (drug-seeking behavior is a valid reason for questioning a claimant's credibility).

ALJ Berry noted concerns regarding Plaintiff's claims not being substantiated by the medical evidence. AR 41. An ALJ may consider inconsistencies between the record and medical evidence when rejecting a claimant's credibility. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995); 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility); SSR 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

Plaintiff argues that the ALJ was required to specifically address his assertions of the need for additional bathroom breaks due to the issue of frequent urination. Not so. This Court's independent review of the medical record found a single reference to Plaintiff experiencing frequent urination AR 416. In fact, most recently, Plaintiff denied having a history of frequent urination. AR 762. Because there was little evidence to support Plaintiff's claim, the ALJ was not required to specifically address this symptom. See *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("in interpreting the evidence . . . the ALJ does not need to 'discuss every piece of evidence'"). Thus, because the medical record does not support Plaintiff's claim of the need for frequent bathroom breaks due to urinary urgency, the ALJ did not err by failing to specifically address this symptom in his credibility analysis. Relatedly then, neither the RFC nor the questions posed to the VE were error. Accordingly, the ALJ did not arbitrarily discredit claimant's testimony and the findings are free of legal error.

//
//
//
//
//
//

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED, and that the JUDGMENT be entered in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Alphonso Collins.

IT IS SO ORDERED.

Dated:   **August 3, 2012**                    **/s/ Gary S. Austin**
                                                                        UNITED STATES MAGISTRATE JUDGE